IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NACOLA MAGEE, and JAMES PETERSON, on behalf of plaintiffs and the classes defined below, | ) ) ) ) | |
| Plaintiffs, | ) ) | 12-cv-1624 |
| vs. | ) ) | Judge John W. Darrah |
| PORTFOLIO RECOVERY ASSOCIATES. LLC | ) ) | Magistrate Judge Martin |
| Defendant. | ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' RENEWED
MOTION FOR CLASS CERTIFICATION**

Plaintiffs seek to certify two classes in this Fair Debt Collection Practices Act ("FDCPA") action against Defendant Portfolio Recovery Associates, LLC ("PRA"). In Class 1 (for Count I- Misleading Settlement Offers on Time Barred Debts), class members were sent a letter during the class period (March 6, 2011 to March 26, 2012) in the form of Appendix A, namely a collection letter that offers to settle a debt, without disclosing that the debt was beyond the statute of limitations, while misleadingly stating the date that PRA received the debt, in the cases of the plaintiffs, some years after the statute of limitations expired.

In Class 2 (for Count II- Threat of Credit Reporting), class members were sent a letter during the class period in the form of Appendix B, which purports to confirm a settlement agreement and misleadingly states "If you complete this payment plan and our company is reporting our company's trade line for this account to the three major credit reporting agencies, our company will report this account as settled" and "We are not obligated to renew this offer," without revealing that the seven year period for reporting to the credit bureaus had expired.

Defendant asserts in its Response in Opposition to Plaintiff's Motion for Class Certification ("PRA Mem") at 1, that plaintiff relies on a "false premise", namely that PRA's settlement letters "'trick' consumers into believing there is a legally enforceable obligation to pay the debt." The Seventh Circuit in *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014), did not find

1

this premise to be false. Indeed, in reviewing similar allegations to those raised by Plaintiffs here, it held that "[t]he proposition that a debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable, regardless of whether litigation is threatened, is straightforward under the statute" and "it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable." *McMahon*, at 1020.

The *McMahon* decision demonstrates that PRA's assertion, that the issue here is "whether an objectively reasonable consumer would perceive Defendant's settlement letters as impliedly threatening litigation," is wrong. PRA Mem at 2. Ten times in its Memorandum, PRA ignores *McMahon* and mischaracterizes plaintiffs' claim to require a showing that the PRA correspondence contained a threat of litigation. PRA Mem at 1,2,5, 8, 9.

Defendant also belittles plaintiff's claims under Count II, implying that "one statement in one letter" would not lead a debtor to believe that PRA would report them to a credit bureau. PRA Mem at 1. However, on August 20, 2014, Judge Durkin held in *Slick v. Portfolio Recovery Associates, LLC*, 2014 WL 4100416 (N.D. Ill.) that a collection letter which makes the exact same credit reporting threat and is identical in form to the one complained of here, violated the FDCPA by containing false and misleading statements and implied that PRA could take action it was legally prohibited from doing. *Id.* at *5 -*9. ("It is evident from the letters' face that they are plainly deceptive....there was no circumstances here under which PRA could have legally reported Slick's obsolete debt to a credit bureau even though the letters implied the contrary.")

Furthermore, as this Court noted in its denial of Defendant's motion to dismiss, in *Lox v. CDA, Ltd.*,689 F.3d 818 (7th Cir., 2012), the Seventh Circuit cited with approval the Ninth Circuit case of *Gonzalez v. Arrow Financial Services, LLC*, 660 F.3d 1055 (9th Cir. 2011) which supports Plaintiff's claims. The *Gonzalez* court stated "To the least sophisticated debtor, the phrase 'if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled'" when the account could no longer be legally reported, "suggests that, under some set of

2

circumstances applicable to the recipient Arrow could and would report the account" and that "the implication that Arrow could make a positive report in the event payment is misleading" and "violates 15 U.S.C. §1692e(10)." *Id.* at1063.

As is apparent from the documents that PRA attached to its Response in Opposition to Plaintiffs' Motion for Class Certification, membership in each of the classes is easily ascertainable. Indeed defendant does not contest numerosity because it has counted the number of class members.

Instead, defendant argues that the classes should not be certified because:

1) Individual issues predominate because plaintiffs only received one settlement letter, while some class members received more.

2) Individual issues predominate because plaintiffs must show subjectively why class members paid money to defendant;

3) Plaintiffs claims are not typical because they each received fewer letters and telephone calls from defendant and because they did not pay in response to the misrepresentations in the letters; and

4) A class action is not a superior method of adjudication because the statutory recovery would be *de minimis*.

As discussed below, defendant's positions are without merit and both classes are appropriately certified as to statutory damages and, for those class members who paid after they were sent the misleading communications after the expiration of both the statute of limitations and credit reporting period, for actual damages.

**I. COMMON ISSUES PREDOMINATE**

This is an FDCPA letter case. Class members are part of the putative classes because they received one (or both) of two letters. Whether the dunning letter was deceptive or misleading in violation of § 1693e is an objective test, based on what an "unsophisticated consumer" would understand. *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012).

The commonality requirement is met where "a common nucleus of operative facts" is alleged

3

and there is at least one question of law or fact common to the class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Where, as here, the defendant is alleged to have "engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters," commonality is satisfied. *Id.*

This case involves two standard form letters. The common question as to Count I is whether the Settlement Letter (Appendix A) violates §§1692e or f of the FDCPA. The common question as to Count II is whether the Threat of Credit Reporting letter (Appendix B) violates §§1692e or f of the FDCPA. Therefore, each proposed class meets the commonality requirement of Rule 23(a)(2). *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 419 (N.D. Ill. 2007) (finding predominance where common issue was "whether the debt collection letters that Defendant sent to [Plaintiff] and the class members violate the FDCPA.") ; *Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008); *Hale v. AFNI, Inc.,* 264 F.R.D. 402, 407 (N.D.Ill. 2009)("Rule 23(b)(3)'s predominance requirement is typically satisfied where the central, common issue is whether the defendant's form letter violates the FDCPA.")

In an attempt to make individual issues where there are none, PRA argues that the Court must consider " the circumstances under which each letter was sent, including how many letters were sent to such consumer over the life of the loan as well as the history of the account." PRA Mem at 2.

The subjective response of each class member to the receipt of the letter is not a necessary inquiry under the unsophisticated consumer standard. The "unsophisticated consumer standard does not require inquiry into any individual's response to or reliance on a letter," but rather it is an objective test of whether "an unsophisticated consumer could reasonably interpret" the letter in a manner that violates the FDCPA." *Jackson v. National Action Financial Services, Inc.*, 227 F.R.D. 284, 289 (N.D. Ill. 2005); *quoting, Gammon v. GC Serv. Ltd., Partnership*, 27 F. 3d 1254, 1257 (7th Cir. 1994); *see also Sledge*, 182 F.R.D. at 258. The Seventh Circuit has held that the recipient need not even have read the letter in order to bring an

4

FDCPA action. *Bartlett v. Heibl*, 128 F. 3d 497, 499 (7th Cir. 1997).

PRA argues that the common questions do not predominate because, although the plaintiffs only received one settlement letter and Magee received a validation letter before the settlement letter, some class members received multiple settlement letters and debt collection calls. PRA Mem at 7-8.

However, there has been no evidence offered by PRA or produced in discovery that shows that PRA at <u>any</u> time, orally or in writing, informed <u>any</u> debtor that the debt was beyond the statute of limitations and no longer legally enforceable. There was <u>no</u> evidence offered or produced in discovery that PRA collectors ever told <u>any</u> class member, orally or in writing, that if the debtor made a payment, under Illinois and Indiana law, the statute was revived and PRA could seek payment through litigation. 735 ILCS 5/13-206. Nor was there <u>any</u> evidence offered or produced in discovery that PRA collectors told <u>any</u> debtor, orally or in writing, that it could not report a debt to the credit bureaus after seven years. The fact that PRA sent <u>Appendices A and B</u> and made collection calls repeatedly over time, without explaining the misleading representations in its letters, merely enhances the nature of the misrepresentations. It does not diminish the claims of either of the plaintiffs that they were sent misleading letters only once in violation of the FDCPA. They have a claim for statutory damages.

## II.    ACTUAL DAMAGES CAN BE HANDLED ON A CLASS BASIS

PRA argues the claim for actual damages raises individual issues that predominate over common questions and thus certification of an actual damages class is not appropriate. PRA Mem at 2, 6-11. It is wrong.

Plaintiffs only seek actual damages for those class members who paid money to PRA when they were sent the misleading communications after the expiration of the statute of limitations <u>and</u> the credit reporting time period. Once both the statute of limitations <u>and</u> the credit reporting period have expired, the consumer does not benefit at all from making a payment on the debt. The consumer can no longer be sued and the debt is no longer impacting the consumers

credit reports. Any payment in fact can only have a negative impact on the consumer because it may renew the statute of limitations and allow the debtor to be sued for any remaining balance. Those persons would benefit from merely receiving a notice from the Court informing them of the limitations on PRA's collection activity.

There is substantial likelihood people who paid money to PRA beyond both the SOL and the credit reporting period were deceived. There was no other reason to pay. They are entitled to get their money back. *Alonso v. Blackstone Financial Group*, 1:11cv1693, 2013 WL 3992122 (E.D.Cal., Aug. 2, 2013), *Hamid v. Stock & Grimes, LLP*, 876 F.Supp.2d 500 (E.D.Pa. 2012), and *Abby v. Page*, 1:10cv23589, 2013 WL 141145 (S.D.Fla., Jan. 11, 2013). If the debt is time-barred or there is another defense, payment is actual damages. *Gervais v. O'Connell, Harris & Assoc.*, 297 F.Supp.2d 435 (D.Conn. 2003).

PRA speculates that people may have paid only to stop PRA from bothering them with phone calls and messages. PRA Mem at 10. However, any debtor can stop debt collector contact by demanding that the debt collector "cease and desist". 15 U.S.C. §1692c. If the debt is beyond the statute of limitation and credit reporting time period, PRA cannot do anything else.

PRA also argues that a debtor may pay a debt so he can get credit in the future. However, once the reporting period has passed, the fact that a debt remains unpaid will not appear on the credit report.

Furthermore, the specific collection details of each account do not create individual issues. Any payment received after Defendant failed to inform the debtor in a written correspondence that the statute of limitations and credit reporting periods have expired, is tainted. The consumer does not know that the debt is no longer legally enforceable, that it can no longer negatively impact her credit report, and that the payment will likely subject her to future litigation and a possible judgment for the balance. That Defendant made ten calls after failing to make this disclosure, is an aggregating factor, not a mitigating one. Plaintiffs claim is that the failure to make these very important disclosures deceives and has a very real and negative consequence for

6

debtors. If a consumer is convinced to make a payment which will have a negative impact on an otherwise unenforceable debt, the debtor should be informed of that fact. The abusive tactics used in combination with the failure to disclose those facts are of no consequence. The debtor is entitled to the option of a return of the money which was collected through deception.

Plaintiffs understand, as noted by *McMahon*, 744 F.3d at 1020, that some people may feel a moral obligation to repay their debts.[1] But why to PRA? PRA's SEC filing shows that it paid 4 cents on the dollar for the debts it purchased. See Report on SEC Form 10-K filed by PRA's parent, Portfolio Recovery Associates, Inc., https://www.sec.gov/Archives/edgar/data/1185348/000118534814000002/praa-20131231x10k.htm, original page 5. ("From our 1996 inception through December 31, 2013, we acquired 3, 098 portfolios...with a face value of $78.6 billion for a total purchase price of $3.3 billion."). The moral obligation is owed to the original creditor that extended the credit that has not been repaid, not a scavenger that pays 4 cents on the dollar. However, if someone REALLY felt they had a moral obligation to pay the debt buyer (rather than the original creditor), he can return or reject the money.

In the context of a class action, this issue can easily be resolved through notice. Class members may be asked a single question on the class notice as to their position on payment of the debt to determine whether they are entitled to relief. The class notice can explain that the tainted payment will be undone, because it was induced through deception, but that if the debtor feels a moral obligation to repay the debt or otherwise wishes to go forward with a clean slate, he may decline to receive his payments back or otherwise return the money to PRA or the original creditor, or both send 4% of the money to PRA and 96% to the original creditor. The answer only affects who will receive actual damages, not PRA's liability. *Wilkerson v. Bowman*, 200 F.R.D.

---

[1] The Langbein law review article, cited by PRA at page 10 of its memorandum, sheds no light on the subject. It addresses the moral obligations felt by heirs to pay decedents' debt, to the person that extended the credit. It does not address whether a debtor has a moral obligation to pay a scavenger who paid 4¢ on the dollar even though the debtor cannot be sued and the creditor cannot report him to the credit bureau.

605, 610 (N.D. Ill. 2001) (finding the "fact that class certification . . . may require the parties to ask the individual class members one question does not automatically establish that individual issues 'predominate'"), citing *Wells v. McDonough*, 1888 F.R.D. 277, 279 (N.D. Ill. 1999).

### III. PLAINTIFFS' CLAIMS ARE TYPICAL

PRA argues that Plaintiffs' claims are not typical because they only received one letter and did not pay. PRA Mem at 4-6.

The typicality argument under F.R.Civ.P. 23(a)(3) is related to the question of commonality under F.R.Civ.P. 23(a)(3). "It is unimportant whether the individual that actually received a violative letter was misled or deceived." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The typicality of plaintiff's claim does not turn on whether he subjectively understood the letter in the same manner as the proposed class members. The letters are evaluated on an objective standard based upon how an unsophisticated consumer would read the letter. *Id.* It is not important to the claim whether plaintiffs received one, two or five letters. Plaintiffs' claims here "have the same essential characteristics as the claims of the class[es] at large," *De La Fuente*, 713 F.2d at 232, and are therefore typical.

Further plaintiffs can represent the classes as to the question of actual damages, even if they have not paid in response to the misleading communications. In *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998), the Seventh Circuit found the type of argument made by PRA to be meritless:

> The defendants' argument on appeal is really quite simple. They contend that, insofar as Keele admits she did not pay the $12.50, her injuries differ from the those sustained by the members of classes A and B. Ergo, she has no standing to represent these individuals in a class-action suit. . . . The district judge felt it unnecessary to decide whether a benefit to the Wexlers was tantamount to actual damage to Keele because the injuries she and the class members alleged were the receipt of the debt collection letters, not the payment of the $12.50 collection fee. We likewise will not consider this question, as it has no bearing upon Keele's standing to represent classes A and B. She, like the members of those classes, received the Wexlers' letters, both purported to be in violation of the FDCPA and CFDCPA. It is thus irrelevant whether or not she paid the collection fee.
>
> As noted above, to satisfy the standing requirement in a class action lawsuit, the class representative must possess the "same interest and suffer the same injury" as the individuals he or she seeks to represent. The injury common to classes A and B was the receipt of the Wexlers' collection letters . . . . The damages recoverable for

8

the class members' injuries may differ--some may be eligible for both actual and statutory damages, others actual damages only, and still others just statutory relief--but the fact remains that their injuries are the same.

*Keele*, 149 F.3d at 593 (citations omitted).

As in *Keele*, plaintiffs can represent class members who paid after receiving the letters at issue here even though they themselves did not pay.

### IV. POTENTIAL DE MINIMIS RECOVERY FOR CLASS MEMBERS DOES NOT WARRANT DENIAL OF PLAINTIFF'S MOTION

PRA argues that it has sent so many letters containing misrepresentations in violation of the the FDCPA that a class cannot be certified since relief to class members would be *de minimis*. The damage cap of the Act limits PRA's exposure on a class basis to 1% of its net worth, thus limiting the pot that the class can share. However, here, notice to the class alone is substantial relief. The benefit is that the class member is notified that the debt is past the statute of limitations or credit reporting period, or both. In addition, as discussed above, plaintiffs here seek actual damages for the class.

Further, in *Mace v. Van Ru Credit Corp*., 109 F.3d 338 (7th Cir. 1997), the Seventh Circuit held that the potential for "*de minimis* recovery (in monetary terms) should not automatically bar a class action." *Mace*, 109 F.3d at 344. The Court explained:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.
>
> True, the FDCPA allows for individual recoveries of up to $1,000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

*Id. See also*, *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the

Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all'."); *Murray v. GMAC Mort. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."); *Carbajal v. Capital One, F.S.B.*, 219 F.R.D. 437 (N.D. Ill. 2004).

*Carbajal*, like this case, was a FDCPA case and, like this case, no settlement had been reached among the parties. The defendants argued that a class should not be certified because each individual class member's recovery would be *de minimis* especially in comparison to that class member bringing his or her own individual lawsuit. In rejecting this argument and granting the plaintiffs' motion to certify, the *Carbajal* court stated:

> [T]he reality is that the choice is not between a class action and a multitude of individual actions, but rather between a class action and *this particular* individual action and maybe a handful more. The class members who might be inclined to shoot for the bigger amount will be clearly advised in the Court's notice to prospective class members that they can forego membership in the class and take on the risks and somewhat larger rewards of individual litigation if they so choose. But to disallow a class action because of the hypothetical possibility of multiple individual actions would effectively sound the death knell to use of the class action in the consumer law context.

*Carbajal*, 219 F.R.D. at 443 (emphasis in the original). *See also Barkouras v. Hecker*, No. 06-366, 2006 U.S. Dist. LEXIS 88998 at *9 (D.N.J. Dec. 8, 2006) (rejecting defendants' "attempt to use their net worth as a sword and a shield: a sword to pierce Plaintiff's attempt to certify a class, and a shield from individual suits that offer very limited or no recovery at all.")

Defendant cites a number of cases for the proposition that courts should not certify a class if the class members' recovery was likely to be *de minimis*. However, all of the cases defendant cites were decided either pre-*Mace* and/or outside of the Seventh Circuit.[2]

---

[2] One case cited by PRA, at page 13 of its Memorandum, *Sonmore v. Checkrite Recovery Services, Inc.* 206 F.R.D 257 (D.Minn. August 2001) is not even followed in its District. *Hartley v. Suburban Radiologic Consultants, LTD.*, 295 F.R.D. 357, 369 (D.Minn. Sept. 30, 2013).

Defendant also argues that class members would stand to recover no more than $1.16 each. PRA Mem at 12. These figures assume that the two classes must share one $500,000 recovery. Plaintiffs would contend that PRA's exposure is $500,000 per class. That figures to $1.85 per class member for Class I and $3.13 per class member for Count II. Defendants well know, of course, that there is *no* likelihood that every single class member will respond to the notice and send in a claim form. A 20% response rate is a generous estimate; a 10% response rate is a more realistic one. This would result in $18.50 being paid to members of Class I and $31.30 being paid to members of Class II.

PRA also argues that the cost of notice and administration is prohibitive. PRA Mem at 12. Those costs do not figure into the class action calculus. PRA is liable for this because it does debt collections on such a massive scale.

Finally PRA argues that class members could collect $1000, plus attorneys fees, by filing individual lawsuits. They point out that plaintiffs' counsel files individual cases. This presumes that any class members will find their way into counsel's office, which *Mace* questioned as quoted above. Further, it is not likely that plaintiff's counsel (or all of the attorneys filing FDCPA actions across the country) could handle 270,000 cases. But as Judge Bucklo mentioned in a recent opinion certifying a class:

> I conclude that a class action is the superior method for adjudicating these claims regardless of whose coffers are at stake. Even assuming that class members could expect no more than a de minimis recovery, other interests are at stake. As I have noted in the past, "if class actions can be said to have a main point, it is to allow the aggregation of many small claims that would otherwise not be worth bringing, and thus to help deter lawless defendants from committing piecemeal highway robbery, a nickel here and a nickel there, that adds up to real money, but which would not be worth the while of an individual plaintiff to sue on." *Miller v. McCalla*, 198 F.R.D. 503, 506 (N.D. Ill. 2001).

> While it is true that the statute allows for individual recoveries of up to $1000, "this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344-45 (7th Cir. 1997) ("we believe that a de minimis recovery (in monetary terms) should not automatically bar a class action").

11

**And of course, judicial efficiency is served by aggregating claims into one lawsuit, rather than resolving the same issue in multiple, individual suits.**

In short, even if I assume that the putative class could expect, at best, a *de minimis* monetary recovery, I am nevertheless convinced that a class action is the superior method of adjudicating plaintiff's claims. (Emphasis added)

*Rawson v. Source Receivables Management LLC*, 289 F.R.D. 267 (N.D. Ill. Feb. 13, 2013).

WHEREFORE, plaintiffs respectfully request that this Court enter an order determining that this action may proceed as a class action.

Respectfully submitted,

s/ Cassandra P. Miller
Cassandra P. Miller

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **CERTIFICATE OF SERVICE**

      I, Cassandra P. Miller, hereby certify that on October 22, 2014, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system, which sent notice via email to the following:

David M. Schultz
dschultz@hinshawlaw.com
Avanti D. Bakane
abakane@hinshawlaw.com
Jennifer Weller
jweller@hinshawlaw.com
Katherine H. Tresley
ktresley@hinshawlaw.com

                                                          s/ Cassandra P. Miller
                                                          Cassandra P. Miller

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)