# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NACOLA MAGEE and JAMES PETERSON, on behalf of plaintiffs and the class defined below, ) ) ) | |
| Plaintiffs, ) ) | Case No. 1:12-cv-01624 |
| v. ) ) | Judge: John W. Darrah |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, ) ) | Magistrate Daniel G. Martin |
| Defendant. ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION
FOR (1) ENTRY OF CLASS WIDE DEFAULT JUDGMENT
BASED ON SPOLIATION OF EVIDENCE AND MISCONDUCT
AND (2) SANCTIONS AGAINST DEFENSE COUNSEL REDACTED**

Defendant, PORTFOLIO RECOVERY ASSOCIATES, LLC, by and through its attorneys, David M. Schultz and Avanti D. Bakane of Hinshaw & Culbertson LLP, and for its Response to Plaintiffs' Motion for (1) Entry of Class Wide Default Judgment based on Spoliation of Evidence and Misconduct and (2) Sanctions Against Defense Counsel Redacted, states as follows:

**Introduction**

The instant motion is in essence a combined presentment to the Article III judge of three motions previously ruled upon or pending in front of Magistrate Judge Martin: (1) defendant's motion to compel arbitration (Docket Entry ("DE") 105); (2) plaintiffs' motion to compel discovery responses (DE 82); and (3) plaintiffs' motion to bar defendant's expert (DE 138). Magistrate Judge Martin rejected the plaintiffs' argument in the first motion, continues to monitor the parties' cooperation with respect to the second motion, and has not yet ruled on the third motion. Plaintiffs' assertions that defendant destroyed documents is similarly without merit, and defendant has not compounded this litigation, let alone in a vexatious or unreasonable manner.

Plaintiffs' theory is that the defendant's letter falsely threatens action that cannot be taken and is misleading because it fails to disclose that a debt is outside the statute of limitations. Plaintiffs' counsel asked the Seventh Circuit for the opportunity to present evidence in the form of an expert to support their claims in this and many related cases. They have been given that opportunity. There have been, and continue to be, discovery disputes, but all of them are unrelated to plaintiffs' ability to prove their case or the issue of damages. The parties conduct in discovery should be viewed in the totality of the circumstances, including the theories of this case, the applicable law, and counsel's conduct in related cases. This motion, which seeks a class wide default judgment, should therefore be denied.

### Brief Procedural History and Nature of Claims

This case involves three collection correspondences attached to Plaintiffs' First Amended Class Action complaint. Court docket entry ("DE") #91 at pp. 1-2. The parties do not dispute the content of these correspondences nor do Plaintiffs dispute that they received these correspondences. Plaintiffs filed the instant lawsuit on March 6, 2012. On August 15, 2012, this Court granted Defendant's motion to dismiss Plaintiff's class action complaint. DE #38, at p. 8 stating, "Since the named representatives of this putative class have failed to properly assert any FDCPA claims against PRA, the putative class claims arising under the FDCPA are necessarily dismissed."

On August 23, 2012, Plaintiffs filed a First Amended Complaint. DE #39. Defendant moved to dismiss the First Amended Complaint. DE #44, 45. This Court denied the motion to dismiss, relying in great part upon *McMahon v. LVNV Funding, LLC,* No. 12-cv-1410, 2012 WL 3307011, at *1 (N.D. Ill. Aug. 13, 2012) *(McMahon II)*. DE #63 at pp. 8-9. The *McMahon* case subsequently was appealed to the Seventh Circuit, and this Court stayed the instant case pending

2

the *McMahon* appeal. DE #74, staying case on April 30, 2013. This Court lifted the stay on March 19, 2014, approximately one year later. DE #77.

Plaintiffs claim that the collection letters misled them because of: (1) the absence of a statement that the debts they incurred years prior were no longer legally enforceable; and (2) the statement, "If you complete this payment plan and our company is reporting our company's tradeline for this account to the three major credit reporting agencies, our company will report this account as settled," which caused Plaintiff Magee to think Defendant would "take her to court." DE #39 at p. 16, Ex. A.

**Argument in Opposition to Motion**

**I.     There has been no failure to comply with Magistrate Judge Martin's Orders.**

Plaintiffs make two incorrect arguments concerning the parties conduct with respect to Magistrate Judge Martin's order compelling production of documents. First, plaintiffs incorrectly assert that defendant has failed to produce a sampling of account notes. Second, plaintiffs incorrectly assert that PRA is concealing the amounts it paid for out of statute debts. Neither assertion is well founded.

**a)     Plaintiffs' counsel and defense counsel have resolved plaintiffs' issues with defendant's production of its account notes.**

Defendant produced a class sampling of over 400 accounts as it had agreed to do. It produced what it commonly refers to as "account notes," which contain the entire history of collection activity on an account, including payments made, notes on verbal and written correspondence sent, and account details such as the charge off date, loan date, last payment date, and last date for furnishing credit information on the account.

Plaintiffs demanded additional information. Specifically, they sought production of the "hyperlink documents," best explained as the screens accessible (but rarely used) to collectors when

3

130938015v1 0932560

pulling up an account. DE #161 at pp. 2, 3 (Section II.A). Defense counsel proposed a compromise wherein it would produce the "hyperlinks" for the 22 accounts it referenced in its response to Plaintiffs' Motion for Class Certification, as well as an additional 12 accounts from each of Classes 1 and 2. Plaintiffs' counsel agreed, defendant has produced these documents, and this issue has been resolved.

> **b)** **The parties continue to work out an agreement with respect to the pricing model used by PRA, and in the event an agreement cannot be reached, will present the issue to the Court.**

Plaintiffs next contend that there should be a class wide default entered because PRA refuses to produce its pricing model with respect to the detailed amounts it paid for debts. The pricing model is obviously critical to the defendant's success, is highly proprietary, and to that end the parties work to come to a mutually agreeable resolution on how to give plaintiffs the information they seek in a fair manner. Defendant has produced some information, the plaintiffs have asked for additional information, and the parties are trying to reach a mutually agreeable compromise without more court involvement. The parties also agreed to put off production for a time period while they explored the possibility of settlement. This issue remains one which is being monitored and completed with the assistance of Magistrate Judge Martin. *See* DE 170, Minute Order dated October 28, 2014, explaining "Status hearing held and continued to January 15, 2015 at 9:30 a.m. The parties report that they are working between themselves to complete matters covered by the Court's recent rulings."

Defendant has offered and continues to offer information with respect to its pricing models. Defendant submits and has explained to the plaintiffs that the defendant's specific pricing models are so irrelevant that they should not themselves be produced when, for example, Defendant has set forth an affidavit explaining that whether or not Defendant is required to disclose that an account is past the statute of limitations is not a factor considered in the scoring or pricing of an account pool.

4

In reality, in its many purchases of account pools, Defendant considered this as a factor one time, for one purchase in 2011, before this case was filed.

It should be noted that the fact that debt buyers pay less for older debt, in addition to being irrelevant to the theory of liability here, is also totally unremarkable. As the Seventh Circuit observed in *McMahon*:

> If the collector has purchased the debt from the original creditor, we know from the FTC that such buyers pay different amounts for debts depending on the age of the debt and the number of previous attempts to collect it, in which case whether the debt is time-barred should be known. The FTC's study found that "debt buyers paid on average 3.1 cents per dollar of debt for debts that were 3 to 6 years old and 2.2 cents per dollar of debt for debts that were 6 to 15 years old compared to 7.9 cents per dollar for debts less than 3 years old. Finally, debt buyers paid effectively nothing for accounts that were older than fifteen years."

*McMahon*, 2012 WL 3307011 at *11 (FED. TRADE COMM'N, THE STRUCTURE AND PRACTICE OF THE DEBT BUYING INDUSTRY 47 (2013) (FTC Report 2013), at p. 21, 23-24). As *McMahon* explains, it is wholly unremarkable that the age of debt affects the price. Notwithstanding, defendant continues to work with plaintiff to comply with Magistrate Judge Martin's order. To the extent the parties cannot come to an agreement, Magistrate Judge Martin is in the better position to rule upon the relevant issues presented. In any event, it is not accurate to say that defendant has failed to comply with the order given the nature and posture of the issue in front of Magistrate Martin.[1]

**II. There has been no spoliation of any evidence, defendant has located the relevant tape at issue, and in any event, the emails are so unrelated to the issues of liability or damages as to not warrant a sanction even if they were destroyed (they were not).**

Plaintiffs next argue that documents have been destroyed. As an initial matter, the deposition testimony to which they refer is so qualified as to not even establish the existence of the

---

[1] What's more, on October 30, 2014, plaintiffs' counsel requested supplemental discovery which required Defendant to engage in an extensive search of hundreds of its accounts. Defendant did so and provided this information in an effort to continue efforts to cooperation between the parties.

documents in the first place.  For example, Mr. Graves explained that there "**may have been** a combination of conversations and/or Emails" concerning requiring the disclosure in letters.  DE 161-1, at Ex. H (filed under seal), at 29:11-29:14.[2]  He testified (over an omitted objection that the question assumed emails existed) that he would need to first check to see if he had any emails, that he had been asked to not delete certain emails, and that he was uncertain as he sat in his deposition whether any emails existed.  DE 161-1 at Ex. G, 48:25-49:18; 55:21-56:22.

This testimony is hardly the type of admission that would warrant a finding of spoliation, let alone entry of a default as a result.  The plaintiff has failed to show the prerequisite to spoliation – the concrete existence of a document.

In reality, defendant has not destroyed any documents and has explained this to the plaintiffs' counsel.  Defendant has preserved all emails from the time period at issue.  The challenge to production is, as explained to plaintiffs' counsel, that defendant has migrated to a new email system since the time at issue, and the information cannot therefore simply be searched to see if there are emails discussing disclosures.  It has been a cumbersome process to even locate the tapes on which the specific emails are located (if the emails even exist).  Those tapes have been located, and defendant is in the process of finding a manner in which they can be searched in order to determine which emails, if any, are responsive to the plaintiff's requests.  This issue is another issue on which the parties are reporting to Magistrate Judge Martin.  In any event, there has been no spoliation.

The relief sought, however, is still not warranted even if defendant had destroyed documents.  Penalties in litigation should be proportional to the wrongs.  *Ball v. Chicago*, 2 F3d 752 (7th Cir. 1993).  "Spoliation that sabotages a strong case supports default judgment; spoliation that

---

[2] Chris Graves' testimony involving Defendant's proprietary pricing model is protected by the Protective Order in this case.  The testimony Defendant cites here falls outside of that issue, and therefore Defendant cites to this testimony within its response.  DE 161-1 at Ex. G, 12:25-13:5.

130938015v1 0932560

destroys collateral evidence in a weak case does not require the same penalty." *Boneck v. City of New Berlin*, 22 Fed.Appx. 629 (7th Cir. 2001).

Defendant has not destroyed any documents. But the documents about which plaintiffs complain have no bearing on the issues of liability or damages. Plaintiff is seeking emails concerning any discussions about whether to include the disclosure language about debts being affected by the statute of limitations. As plaintiffs' counsel well knows, defendant's intent in sending these letters is of no consequence, as the FDCPA is a strict liability statute. Moreover, defendant has withdrawn its bona-fide error defense. DE #81. The Seventh Circuit has explained on multiple occasions that plaintiffs asserting claims of potentially false or deceptive communications under the FDCPA must present extrinsic evidence that proves how an unsophisticated consumer perceives the communication, not why the debt collector acted as it did. *Bode v. Encore Receivable Mgmt., Inc.,* No. 05-CV-1013, 2007 WL 2493898, at *7 (E.D. Wis. Aug. 30, 2007)(As noted above, the test for determining whether a debt collector violated §§ 1692g(a)(2) and 1692e is objective, "turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer"), citing *Turner v. J.V.D.B. & Assoc.,* 330 F.3d 991, 995 (7th Cir. 2003).

The Seventh Circuit has further explained that "the most useful sort [of extrinsic evidence is] the kind of consumer survey" that measures consumers' perception, similar to surveys used in trademark lawsuits. *Evory v. RJM Acquisition Funding, LLC*, 505 F.3d 769, 776 (7th Cir. 2007), citing *Johnson v. Revenue Management Corp.,* 169 F.3d 1057, 1060-61 (7th Cir.1999); *see also Pettit v. Retrieval Masters Creditors Bureau, Inc., supra,* 211 F.3d at 1062.

Plaintiffs acknowledge, as they must, that it is their burden of proof to establish that the unsophisticated consumer was misled or deceived by the text of these correspondences. Yet, they continue to raise disputes regarding the discovery in this case rather than focusing on the merits of

7

their claims. These emails have no bearing on the evidence in this case, and even if they were destroyed (they were not), they are so collateral to this case as to not warrant sanctions.

  **III. The motion to compel arbitration was not untimely, and plaintiffs' objection was specifically rejected by Magistrate Judge Martin.**

  Plaintiffs next argue that defendant should be sanctioned for filing a motion to compel in an untimely manner. First and foremost, this is obviously yet another issue that was decided by Magistrate Judge Martin. Indeed, the plaintiffs argued that the motion should be denied as untimely, and Magistrate Judge Martin rejected that argument. *See* DE 165. In particular, Magistrate Judge Martin spent several pages examining the issue and concluded that the motion was not untimely. He noted that although the case was two and a half years old with considerable discovery, the plaintiffs' argument was unpersuasive.

  Magistrate Judge Martin examined the true history of the case and concluded that because the "relevant inquiry is therefore whether the relatively brief delay of three months … amounts to waiver," defendant was not dilatory in bringing the motion to compel. DE 165, pp. 3-4. He concluded that "[b]ased upon the totality of the circumstances, therefore, the Court finds that PRA has not waived its right to enforce the arbitration agreement by waiting too long to request arbitration." DE 165, p. 5. It plainly reasons that because plaintiffs' objection based upon untimeliness was rejected, it cannot serve as a basis for sanctions[3]. It does not matter for purposes of this motion that the request to compel arbitration was denied on other grounds – it was not rejected as untimely.

  **IV. Defendant has not prevented plaintiffs from completing expert discovery in a timely manner.**

---

[3] It should be noted that the untimeliness objection to motions to compel arbitration are rejected increasingly in this district. *See, e.g., Terech v. First Resolution Management Corp.*, et al, No. 11-cv-4076 (N.D. Ill. 2013) at DE 108 (response brief challenging a motion to compel arbitration as untimely because it was 18 months after the case was filed) and DE 110 (order granting motion to compel arbitration).

Magistrate Judge Martin is still considering plaintiffs' motion to bar defendant's expert[4]. The conduct of the parties in this, and the numerous other related cases, shows that defendant did not prevent plaintiff from completing expert discovery. As defendant explained to Magistrate Judge Martin, prior to the close of fact discovery and before the deadline for expert discovery defendant disclosed its expert and stated that it would produce its expert's report upon receipt. As explained above, plaintiffs must present expert evidence to survive summary judgment. *Evory,* 505 F.3d at 776. Plaintiffs' counsel has filed several other cases on the same theory as this case, all of which were stayed pending the resolution of the *McMahon* appeal. *See McMahon v. LVNV*, No. 12-cv-1410 (N.D. Ill. case # 12-cv-1410); *Rawson v. Source Receivables*, No. 11-cv-9872 (N.D.Ill.); *Rice v. Midland Funding*, No. 12-cv-1395 (N.D.Ill.); and *Anguiano v. LVNV Funding*, No. 12-cv-532 (N.D.Ind.) (the "Related Cases).

Before this case and the Related Cases were stayed, plaintiffs produced an expert report by Timothy Goldsmith and indicated his report and opinion would be the expert report in this case and the Related Cases. In an effort to cooperate and reduce the expense of litigation, plaintiffs' counsel and defense counsel agreed to depose Mr. Goldsmith as few times as possible and to use his testimony in the multiple cases where both counsel were involved. That agreement was confirmed at the beginning of Mr. Goldsmith's deposition (which was taken in the *Rawson v. Source Receivables* case). Defendant's counsel also agreed to use one defense expert for the same related cases so that the litigation costs of the plaintiffs would also be minimized.

Plaintiffs now claim that the disclosure of defendant's expert, which consisted of a two page report, is untimely in this case because his report was not produced within 30 days of the disclosure

---

[4] Plaintiffs' counsel filed an identical motion to bar the same expert for the same reasons in *McMahon v. LVNV*, No. 12-cv-1414 (ND Ill. J. Kocoras). In that case, the expert discovery cutoff was October 7, 2014, and McMahon cried foul that Defendant untimely disclosed its expert on October 1, 2014. On October 7, 2014, without requiring any briefing, Judge Kocoras denied McMahon's motion and extended the expert discovery deadline though January 6, 2015.

of Goldsmith's report. Goldsmith was identified as an expert in this case before his deposition on April 23, 2013, which was during the period of time that this case was on appeal to the Seventh Circuit. This case was not reinstated until March 2014. Given the circumstances of this case and the relationship to the Related Cases, defendant submits that the unusual history and interrelated expert discovery of the multiple cases in which plaintiffs and defendants proceeded on an agreement to use the same experts, defendant did not do anything to preclude plaintiffs from completing expert discovery.

The parties' counsel's continuing conduct should also be considered. Since the filing of the motion to bar defendant's expert, the most important factor to consider is that defendant's expert has been deposed in this case (if his disclosure is permitted) and in the Related Cases. It should also be noted that plaintiffs' counsel has again disclosed the same expert in more cases. *Jones v. Daniel P. Scott, et al.,* No. 14-5381 (N.D. Ill.); *Dolemba v. Northland Group, Inc.*, No. 13-5308 (N.D. Ill.); *Anguiano v. LVNV Funding*, No. 12-cv-532 (N.D .Ind.).

Indeed, in the *Dolemba* case, plaintiffs' counsel even requested an extension of time to disclose the same expert. Chain of electronic correspondences between counsel for the parties, attached hereto as <u>Exhibit 1</u>. This request came a few hours before the plaintiff's deadline to disclose an expert opinion. Notwithstanding, defendant's counsel agreed to the request, and asserts that this agreement is far more in line with the cooperation between counsel in the past. In any event, defendant submits that under the circumstances, it is not fair to conclude that it prevented plaintiffs from completing expert discovery.

    **V.    The designated 30(b)(6) witnesses had information on the identified topics, and in any event, defendant agreed to produce additional witnesses sought by the plaintiff.**

Defendant disagrees with plaintiffs' conclusion that Mr. Stern was unable to offer testimony on the topics for which he was presented. Defendant acknowledges that as if often the case, there

10

were some questions to which he did not know the answers. It is not correct, however, to conclude that he had no information on the topics set forth in the deposition notice. There is no need for a line by line examination of the deposition, and plaintiff offers nothing but their conclusion. The simple fact is that on any question about which he was unsure of an answer, defendant provided a witness to answer plaintiffs' questions.

Plaintiffs incorrectly assert that defendant "refused to produce [PRA employees who Mr. Stern identified in his deposition] and filed a motion for a protective order to prevent plaintiff [sic] from any other witnesses on these subjects." Pltfs' Response, p. 14. That motion, also presented to and resolved by Magistrate Judge Martin, was filed because plaintiffs unilaterally picked the timing of the depositions and would not reasonably cooperate in the rescheduling. *See,* gen., DE 94. Indeed, the motion itself explained, "Defendant and its counsel are reasonably attempting to reschedule the depositions Plaintiffs seek to take in this case. Plaintiffs' demand that these take place before August 15 is not reasonable, as at least one witness knowledgeable on several of the deposition topics listed is out of the office for two weeks." DE 94, p. 5.

Plaintiffs now bizarrely, incorrectly, and without reference to any specific docket entry asserts defendant's motion "was denied by [Magistrate] Judge Martin." Pltfs' Response, pp. 14-5. In reality, the issue was once again resolved by agreement, and the parties entered an Agreed Order as to the motion for a protective order. *See* DE 103. In any event, defendant respectfully submits that given the nature of this case, it was not unreasonable to have presented four witnesses for depositions, and it was not trying to avoid its obligations under Rule 30(b)(6), or any other rule. To the contrary, the protective order was directed at the timing of the production of witnesses, not an effort to stonewall discovery, and it was resolved by agreement.

**VI.**     **The appropriate standard shows that the sanction sought – a class wide default judgment – is unwarranted.**

Plaintiffs proposed standard of review for their motion is selective, and concludes with an inappropriately unfair and personal conclusion that "[t]his is not the first time that defense counsel has engaged in these type of dilatory tactics." Pltfs' Response, p. 15. The opinion to which plaintiffs cite, *Sledge v. Sands*, was decided 15 years ago, and was issued seven days after defendant's counsel filed an appearance. No. 98-cv-1026 (N.D.Ill. J. Bucklo). As plaintiffs' counsel knows from its handling of the *Sledge* case, it proceeded for fourteen months prior to defendant's counsel's appearance. Plaintiffs' counsel and defense counsel have had literally hundreds of cases together in the past fifteen years, and the reference to the *Sledge* case in such a misleading manner perhaps reveals the true nature of this request.

Te appropriate standard for entry of a judgment reveals that it is simply not proper here. Judgment is the most severe sanction and generally is applied only when a party has displayed exceptional misconduct and less drastic sanctions have proven unavailing. *Domanus v. Lewicki,* No. 13–2435, 742 F.3d 290, 2014 WL 408723, * 8 (7th Cir. Feb.4, 2014); *Sun v. Board of Trustees,* 473 F.3d 799, 811 (7th Cir.2007) (explaining that the Seventh Circuit has a well established policy of favoring trial on the merits over default judgments); *Maynard v. Nygren,* 332 F.3d 462, 467–468 (7th Cir.2003); *Danis v. USN Communications, Inc.,* 2000 WL 1694325, 33–34 (N.D.Ill. Oct.23, 2000) ("Because a default judgment deprives a party of a hearing on the merits, the harsh nature of this sanction should usually be employed only in extreme situations where there is evidence of willfulness, bad faith or fault by the noncomplying party") (*citing Societe Internationale v. Rogers,* 357 U.S. 197, 209, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (explaining that a party should be sanctioned with dismissal only in extreme situations where there is evidence of willfulness, bad faith or fault by the noncomplying party)). The court first must consider whether less severe sanctions will remedy the damage. *Marrocco v. General Motors,* 966 F.2d 220, 223–224 (7th Cir.1992).

When assessing dismissal for the failure to comply with a court order, the court must consider whether there has been a clear record of delay or contumacious conduct or whether less drastic sanctions have been unavailing. *Domanus,* 742 F.3d 290, 2014 WL 408723 at *8; *Maynard,* 332 F.3d at 468–469. Alternatively, a court must enter a finding of bad faith to dismiss a case under Fed.R .Civ.P. 37. *Maynard,* 332 F.3d at 468–469 (citing *In re Golant,* 239 F.3d 931, 936 (7th Cir.2001); *Langley v. Union Electric Co.,* 107 F.3d 510, 514 (7th Cir.1997); *In re Rimsat, Ltd.,* 212 F.3d 1039, 1046–47 (7th Cir.2000) (requiring a finding of bad faith when a district court dismisses a case under the inherent powers of the court).

Bad faith is "conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order." *Marrocco,* 966 F.2d at 224; *Maynard,* 332 F.3d at 470 (explaining that bad faith is exhibited where a party fails to comply with a court order or provides false or misleading responses). The Seventh Circuit requires clear and convincing evidence of the discovery abuse to justify a default judgment because of the harsh nature of the penalty and the court's policy of favoring trial on the merits. *Maynard,* 332 F.3d at 468 ("[C]onsidering the severe and punitive nature of dismissal as a discovery sanction, a court must have clear and convincing evidence of willfulness, bad faith or fault before dismissing a case."); *Larson v. Bank One Corp.,* 2005 WL 4652509, *9 (N.D.Ill. August 18, 2004) (explaining that a default judgment requires clear and convincing evidence of the sanctionable conduct).

Plaintiffs' motion, which relies upon mischaracterizations or misstatements of the underlying record, is not well founded. The issues presented here have been decided by Magistrate Judge Martin, in at least one instance in favor of defendant, or are still being considered by him. The instant motion is an improper reconsideration of those rulings in the form or a sanctions motion. It should be rejected.

130938015v1 0932560

WHEREFORE, Defendant, PORTFOLIO RECOVERY ASSOCIATES, LLC, respectfully requests that this Court deny Plaintiffs' Motion and for such further relief as this court deems appropriate and just.

> Respectfully submitted,
>
> PORTFOLIO RECOVERY ASSOCIATES, LLC, Defendant
>
> *s/David M. Schultz*
> Ones of its Attorneys

David M. Schultz
Hinshaw & Culbertson LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
Telephone: 312-704-3000
Facsimile: 312-704-3001
E-mail: abakane@hinshawlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2014, I electronically filed with the Clerk of the U.S. District Court, Northern District of Illinois Eastern Division, the foregoing **Defendant's Response to Plaintiffs' Motion for (1) Entry of Class Wide Default Judgment based on Spoliation of Evidence and Misconduct and (2) Sanctions Against Defense Counsel Redacted** by using the CM/ECF system, which will send notification of such filing(s) to:

Cassandra P. Miller
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
E-mail: cmiller@edcombs.com

> *s/David M. Schultz*